Erickson v. Bell.

ERICKSON v. BELL.

1. **Usury**: PROMISSORY NOTE: PRINCIPAL AND AGENT. Where an agent for the loaning of money took a note for a larger amount than that actually loaned, bearing ten per cent interest, and payable to himself, and the borrower had no knowledge of his agency, but supposed him to be the principal in the transaction, it was held that the note was usurious in the hands of the principal.

2. **Evidence**: INTEREST OF WITNESS: DECLARATIONS. Evidence of the declarations of a witness to the effect that he is interested in the result of the suit are incompetent to establish such interest.

*Appeal from Buena Vista District Court.*

WEDNESDAY, JUNE 9.

ACTION OF REPLEVIN. The petition shows that plaintiff is the absolute owner of the property, and that defendant holds it under a chattel mortgage for the purpose of sale and foreclosure, but plaintiff avers that the mortgage has been fully paid. The answer admits the possession of the property and alleges that the mortgage under which it is held still justly subsists and has not been paid. There was a verdict and judgment for plaintiff. Defendant appeals. Other facts in the case appear in the opinion.

*Lot Thomas*, for appellant.

*Robinson & Milchrist*, for appellee.

BECK, J.—I. The plaintiff claims that the note secured by the chattel mortgage is usurious, and that the payments made thereon, and upon the unlawful interest, are sufficient to

fully discharge the note and mortgage. But the defendant insists that the plaintiff is estopped from the setting up usury in the note, for the reason that before the holder of the note acquired it he applied to plaintiff for information in regard to its validity, and was informed that it was all right, and the amount purporting to be due thereon was unpaid.

The evidence tends to prove the following facts: In 1875 plaintiff borrowed of D. C. Thomas $100, for which he gave his note for $120, and ten per cent per annum interest, payable one year after date. Certain payments were made upon this note. All the business was done by D. C. Thomas, and plaintiff had no reason to believe that he was acting as the agent of another. This note was indorsed by D. C. Thomas, without recourse, to John Lewis. It was usurious. In 1878 plaintiff arranged with D. C. Thomas for an extension or renewal of the note by the execution of a new note and mortgage, the contract providing for the payment of unlawful interest. When the note and mortgage were presented to plaintiff for execution he discovered that Thomas Thomas, the father of D. C. Thomas, was made the payee of the note and mortgage. This instrument secured the balance due upon the first note with usurious interest. The plaintiff was informed by D. C. Thomas that he was procuring the loan from Thomas Thomas. The amount due on the first note, without deducting the amount of usury paid, was $95. The second note was due in ten months and was for $115. D. C. Thomas executed and handed to plaintiff a receipt for $18 for services in procuring the loan. But nothing was paid; the $18 was included in the note. No money passed to or from either of the parties in this transaction. It does not appear that the last note was ever in the hands of Thomas Thomas. D. C. Thomas acted as agent for his father and received certain payments made on the last note. The payments on the first note were also made to him. The first note D. C. Thomas gave to Lewis, who immediately returned it and took a receipt which specified that it should be held for

collection.    All payments were made to D. C. Thomas.    The
agreement between him and Thomas Thomas was to the effect
that the former should pay the latter the money received for
loaning and ten per cent per annum interest, and retain all
interest collected above the lawful rate, and commissions.
This was the arrangement with both Lewis and Thomas
Thomas.

The court correctly instructed the jury that if the two
notes were separate transactions the last one was not subject
to the usury paid on the first, but if the last one was a con-
tinuation of the original transaction, was a renewal of the
first, it was usurious.

II.    The court gave the jury the following instruction,
which is complained of by defendant:

"In determining whether the first note was usurious or
not, you are told that if D. C. Thomas loaned $100 to Erick-

1. USURY : son and took his note for $120, drawing ten per
promissory
note : princi-
pal and agent. cent interest per annum; that he did not say or
pretend that the money was not his own, and
Erickson believed that it was Thomas' money, then you should
find that the first note was usurious; but if Erickson knew
that Thomas was acting as agent for John Lewis, or any other
third person, or if Thomas told him he was so acting, and he
in fact was acting as an agent, then the note would not be
usurious unless the party for whom he was acting authorized
him to charge more than ten per cent interest, or had knowl-
edge that he was doing so."

The instruction contemplates the facts that the note referred
to was made payable to D. C. Thomas, and that plaintiff had
no knowledge that the money was not really the property of
the agent, but believed that it was.

A person dealing with an agent in regard to personal prop-
erty entrusted to him by the principal, without knowledge
that the property is not owned by the agent, but supposing
him to be the owner thereof and the principal in the trans-
action, will possess all the rights that he would have acquired

had the transaction been with the real principal.    See Story's Agency, section 444.  - This rule is applicable to the case before us.    It is founded upon the plainest principle of law and justice.

In support of his position that the instruction is erroneous counsel for plaintiff cites *Lee v. Chadsey*, 3 Abbott, Court of Appeals Decisions, page 43, and *Estevez et al v. Purdy et al*, 66 N. Y., page 446.    These cases, as well as *Bell et al., Administrators, v. Oliver*, 32 N. Y., 165, and *Condit v. Baldwin*, 21 N. Y., page 219, to the same effect, differ from the case before us in that the notes involved in the several actions were not made payable to the persons acting as agents.    The note referred to in the instruction was payable to D. C. Thomas, and he was not known by the defendant to be the agent of Lewis.    The fact that the notes were payable to the principals gave the respective makers notice that the persons with whom they dealt were agents.    The defendant in this case had no notice of that kind.

III.    A witness was permitted to testify, against defendant's objection, that D. C. Thomas had said he would be a loser if

2, EVIDENCE:
interest of
witness: dec-
larations.

this suit should be decided against defendant; that the holder of the note would have recourse upon him.    The evidence was improperly admitted.    It was clearly incompetent · to impeach the credibility of the witness D. C. Thomas, who had before testified, as no foundation had been laid for the evidence by directing his attention to the time and place where the declarations were alleged to have been made.    Neither was it competent to show that the witness was interested in the suit, as a guarantor of the note or otherwise, in order to affect his credibility.

Under the rules of evidence prevailing at common law, the interest of a witness renders him incompetent and may be shown to exclude his evidence.    Under our statute a witness is not incompetent by reason of interest, but it may be shown for the purpose of lessening the credibility of his testimony.

Code, § § 3636, 3637. The rules relating to the admissibility of evidence showing the interest of a witness are the same at common law and under the statute. A difference arises only as to the effect of the interest, and consequently as to the time when it may be shown. At common law the court passes upon the evidence, and, if the interest be established, excludes the testimony; under the statute the evidence goes to the jury and is considered upon the question of the credibility of the witness. The difference above referred to does not extend to the manner of showing the interest of the witness. Decisions of the courts made at common law must, therefore, determine the question under consideration. It has been often held that the testimony for the purpose of establishing declarations of a witness, to the effect that he is interested in the event of the suit, is not admissible; it is regarded as mere hearsay evidence. *Rich v. Eldridge*, 42 N. H., 153; *Vining v. Wooten*, Cooke, Tenn., 127; *Commonwealth v. Waite*, 5 Mass., 261; *Pierce v. Chase*, 8 Mass., 487; *Pallock's Lessees v. Gillespie*, 2 Yeates, 129; *Young v. Garland*, 18 Me., 409; *Stewart v. Lake*, 33 Me., 87; *Cotchett v. Dixon*, 4 McCoid, 311; *Dunn v. Cronise*, 9 Ohio, 82; *Sims v. Givan*, 2 Blackf., 461; *Freeman v. Suckett*, 2 J. J. Marsh., 390; *Davis v. Whiteside*, 4 Id., 116; *Jones v. Tevis*, 4 Lett., 25; *Stimmel v. Underwood*, 3 Gill & John., 282; *Walker v. Coursin*, 19 Tenn., 321.

A different rule was recognized in *Denn v. Jones*, 1 Cox's Rep., 46; Anon., 2 Haywood, 340, and *Colston v. Nichols*, 1 Har. & John., 105. The last case was overruled in *Stimmel v. Underwood, supra*.

*Lucas v. Flinn*, 35 Iowa, 9, is not applicable to the question before us. In that case a party to the action testified to a fact claimed by him to be relevant to the issues. A witness was permitted to give testimony of a declaration of the party in conflict with his testimony. This was held to be correct upon the ground that the fact testified to by the party was to be regarded as in issue in the case.

Other questions discussed by counsel need not be considered. For the errors in admitting the evidence above pointed out, the judgment of the District Court is

REVERSED.